CHARLES HERBERT DIAMOND, Respondent, *v.* EVERETT P. WHEELER, Appellant.

*Real estate broker's commissions — one of two trustees may employ the broker and be sued by him — effect of a discharge of the broker and subsequent sale of part of the land to a party introduced by him — a written memorandum not proved to have been shown to the other party is not competent evidence against him.*

One of two trustees, who employs a broker to find a purchaser for the trust real estate, is liable in his individual capacity upon the contract of employment, and, in an action by the broker to recover upon such contract for commissions, it is not essential that the other trustee be made a party defendant.

An owner of a portion only of a piece of real property, who employs a broker to find a purchaser for the entire piece, may, at any time, after negotiations for the sale of the entire parcel have fallen through on account of the refusal of the owners of the other portion of the parcel to sell at the price offered, discharge the broker from his employment, and if he subsequently, without the assistance of the broker, effects a sale of the portion of the tract owned by him to the person with whom the former negotiations were had, that fact alone will not render him liable to the broker for commissions upon such sale.

Upon the trial of an action it is not error to exclude a written memorandum made by the defendant, which he directed his clerk to telephone to the plaintiff, and which the person who came to the telephone refused to receive, where it does not appear that the person who refused to receive the message was the plaintiff or that the written memorandum was ever communicated to the plaintiff prior to the time when it was offered on the trial.

PATTERSON, J., dissented.

APPEAL by the defendant, Everett P. Wheeler, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of May, 1902, upon the verdict of a jury, and also from an order entered in said clerk's office on the 27th day of September, 1902, denying the defendant's motion for a new trial made upon the minutes.

· *John A. Garver,* for the appellant.

*William C. Breed,* for the respondent.

HATCH, J.:

This action is brought to recover brokerage fees, claimed to have been earned by effecting the sale of certain premises known as the " Appraisers' Stores," of a portion of which the defendant Wheeler and another were owners as trustees of the Spofford estate. These

stores occupied the whole block, except a small liquor saloon, occupying one corner. The Astor estate owned the center portion of the block, which the Spofford estate held under a lease for a long term of years.

The complaint avers that the plaintiff was employed to sell the entire block, except the small store on the southwesterly corner, and further avers that on the 6th day of February, 1899, a contract was entered into and a sale subsequently effected at the purchase price of $425,000 of the property owned by the trustees. The answer denies that the trustees had power to sell the entire property, or that they ever agreed to pay plaintiff commissions therefor, and that he never procured a purchaser. It appeared from the evidence that in the latter part of December, 1898, the plaintiff saw the defendant, and he authorized him to sell the whole property and agreed to give him a commission of one per cent if he should complete the sale. It is not contended but that this arrangement was made, and that pursuant thereto plaintiff sought to obtain purchasers for the entire property, and that on or about the second or third day of January he introduced to the defendant Mr. Gibson and Mr. Secor, who subsequently purchased that portion of the property owned by the Spofford estate. When the parties first met, after some negotiations and haggling about the price, Mr. Wheeler refused to take anything but cash for the property, and that as the Astor estate owned a portion running through the entire block Mr. Wheeler thought that it could be purchased for $125,000, and the purchase price was fixed with reference to such acquirement of title. Negotiations were continued, but Gibson and Secor did not close the transaction, and the defendant leased a portion of the property. After this lease had been executed, Gibson and Secor made an offer for the property on January 28, 1899, which was accepted conditionally upon its being possible to obtain title to the Astor property. Subsequently it was learned that Astor would not sell and this contract fell through. Thereafter Gibson and Secor entered into a contract for the purchase of that portion of the property owned by the Spofford estate, and on February fourth the price therefor was agreed upon, and on February sixth the sale was consummated by entering into a contract for its purchase at the price of $425,000, which contract was subsequently carried out.

It is the contention of the defendant that the plaintiff only had an agreement to sell the whole property, and when he was unable to obtain purchasers willing to pay the price which the Astor estate wanted for its property, that he had nothing more to do with the transaction and was not entitled to any commission upon the sale of that portion of the property owned by the trustees. Upon this point defendant gave evidence tending to show that after the sale of the entire property had fallen through and on the 6th day of February, 1899, the defendant notified the plaintiff over the telephone that the Spofford estate would no longer recognize him in connection with the sale of the " Appraisers' Stores ; " that the plaintiff never introduced Gibson and Secor to him, but that they were introduced by a man named Nicholson to whom commissions were paid.

The plaintiff testified that on the 4th day of February, 1899, he had a talk with Mr. Wheeler over the telephone, in which Mr. Wheeler told him that the Astor estate had refused to sell and the thing for Diamond to do was to go ahead and get his parties to purchase the rest of the property and that he would pay commissions therefor ; that he talked with Gibson and Secor about purchasing the Spofford property and that they made defendant a written offer upon that day which was accepted. Gibson and Secor substantially corroborate him upon this point and that it was through Diamond's negotiations that they made the final offer, which was accepted.

The jury found for the plaintiff, and upon the judgment entered thereon and the order denying a new trial this appeal is taken.

The complaint in the action avers that plaintiff was employed to sell the whole of the property with the exception of the liquor saloon. This undoubtedly embraced that part owned by the Astor estate, as well as that owned by the trustees, and had the evidence established that this was the only contract that was ever made there could be no recovery for commissions, as such contract was not fulfilled· and was rendered impossible of performance by Astor's refusal to sell ; but the complaint further avers that the defendant promised and agreed to pay the plaintiff in the event he procured a purchaser for the premises or the part thereof owned by the trustees the usual commission allowed to brokers. This was at least an attempted averment of an engagement of the plaintiff to sell the

whole or a part. Evidence was given by both parties respecting all of the conversations which were had, showing the contract and its modification without objection that such testimony was not admissible within the pleadings and the whole question was submitted to the jury. Under the issues as raised, therefore, the plaintiff became entitled to recover if he continued his negotiations with the assent of the defendant and such negotiations resulted in a sale of the property owned by the trustees. If he so continued in his employment and was the procuring cause of the sale, he is entitled to his commission (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378), and the defendant is liable to him therefor. (*Austin* v. *Munro*, 47 id. 360.) Nor was it essential that the co-trustee should be joined as a party defendant. Mr. Wheeler's engagement with the plaintiff, if anything, was personal. (*Jarvis* v. *Schaefer*, 105 N. Y. 289.) The case comes to rest, therefore, upon a determination of the question as to whether the plaintiff was in good faith discharged from any further employment in and about effecting the sale prior to the time when the agreement was reached. There was the unquestioned right in the defendant, if the sale of the whole property had fallen through, to sever all relations with the plaintiff, and if he did that in good faith, although he subsequently effected a sale of the property owned by the trustees to the parties with whom the plaintiff had negotiated, he would not be liable to him for commissions. He had the right at any time after the failure to obtain title to the Astor property to discontinue negotiations with the purchasers of the property, or to refuse to permit the plaintiff to offer such property for sale, and if he subsequently effected a sale to the persons with whom he had a former negotiation, such fact, standing alone, does not create any obligation against him to pay commissions to the plaintiff. The crucial fact, therefore, is, was the plaintiff discharged? Halstead, who represented the beneficiaries under the trust estate, and who was engaged in conducting negotiations for a sale of the property, testified that he told the plaintiff on January seventeenth that he was to have nothing further to do with this property, and that his connection therewith was terminated, so far as the Spofford estate was concerned, on that day. The plaintiff, however, testifies that he had a conversation with Halstead as late as January twentieth, at which time Halstead

asked him to take Nichols & Co. into the negotiations, and that he refused, stating that he had closed the deal and had everything fixed. Halstead, undoubtedly, occupied very intimate relations with the trustee, and he was recognized by both the trustees and the plaintiff as having authority to represent the estate in and about the negotiations. He did not, however, have control over the trustee so as to prevent him from continuing negotiations with the plaintiff for a sale of the trust estate, and even though Mr. Halstead directed the plaintiff to have nothing more to do with the negotiations, this did not preclude the defendant from continuing them with him. But whether Halstead severed negotiations became a question of fact under the testimony given by the plaintiff with respect thereto. The plaintiff testifies that he was authorized and urged by the defendant after the Astor negotiations had terminated to go on and procure a purchaser of the trust estate, and that, acting thereunder, he did see the purchasers, negotiated with them respecting the same and finally brought them to a point where they concluded to purchase the property, and so stated to the plaintiff on the fourth of February, and the purchasers then intrusted him with a commission to negotiate respecting a lease held by one Durkee; that the plaintiff thereupon telephoned to the defendant that the purchasers would take the property, and upon this subject the purchasers themselves corroborate the plaintiff's statements. This testimony, if believed by the jury, showed that the plaintiff was continually engaged with these purchasers in effecting a sale of this property from the time he was first employed by the defendants down to the consummation of the sale. The testimony upon the part of the defendant controverts and contradicts this version of the negotiations by the plaintiff and his witnesses, and, if believed, authorized a finding that the defendant had in good faith severed his relations with the plaintiff and that he was not authorized and had not been for some time previous and did not in fact negotiate a sale of the property. This condition, however, presented a question of fact for determination by the jury, and the court submitted the question for determination in a very full and complete charge, which covered every phase of the case and was quite as favorable to the defendant as that to which he was entitled. We are quite convinced that in the letter, which was written by the plaintiff on February fourth to the defend-

ant, he was engaged in making testimony to support his claim, but such fact did not destroy the other testimony in the case, and upon it the jury had the right to found a verdict. The exclusion of the written memorandum made by the defendant to be telephoned to the plaintiff was not error. It was a mere declaration upon his part and no more admissible in evidence than would have been any other declaration. It was not shown to have been communicated to the plaintiff. No attempt was made to prove that the person who refused to receive the message from the defendant's clerk was the plaintiff, nor was there any other attempt to show that such declaration was ever communicated to the plaintiff prior to the time when it was offered upon the trial.

This case presents a question of fact, and whatever may be our views respecting the merits of the controversy, it seems clear to us that the evidence was sufficient from which to find that the plaintiff was employed to sell the property and was the procuring cause in effecting such sale. This entitles him to recover.

It follows that the judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., INGRAHAM and LAUGHLIN, JJ., concurred; PATTERSON, J., dissented.

Judgment and order affirmed, with costs.